NOT RECOMMENDED FOR PUBLICATION
File Name: 25a0376n.06

Case No. 24-1469

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
Jul 28, 2025
KELLY L. STEPHENS, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff-Appellee, | ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF MICHIGAN |
| v. | ) ) ) | |
| JULIUS CURTIS ROBINSON, JR., | ) | |
| Defendant-Appellant. | ) ) | OPINION |

Before: SUTTON, Chief Judge; STRANCH and RITZ, Circuit Judges.

SUTTON, Chief Judge. Julius Robinson shot at someone while drunk, high, and on probation. He claims that the Second Amendment protected his right to possess the gun he used. We disagree and affirm.

On February 23, 2023, in his hometown of Kalamazoo, Michigan, Julius Robinson made several bad decisions. He consumed alcohol, marijuana, oxycodone, and codeine. Then he walked into a liquor store and got into an argument with a fellow patron. When the patron left the store, Robinson followed him, announced, "I'll kill you," and opened fire. R.67 at 5 ¶ 13. Robinson missed and left the scene. Police matched the shell casings to Robinson's semiautomatic pistol, which they found in his bedroom, and placed him under arrest.

This was not Robinson's first offense or second or third. At age 25, he had seven criminal convictions to his name, three of them felonies. He had assaulted someone, trespassed, disturbed the peace, possessed illegal drugs (twice), and carried a firearm without a license (also twice).

The offense at issue today came just a year after police caught him with a concealed weapon and three months into a term of probation for that crime.

After the police apprehended Robinson, a federal grand jury indicted him for possessing a firearm as a felon in violation of 18 U.S.C. § 922(g)(1). That statute permanently disarms felons by making it unlawful for any person who has been convicted of "a crime punishable by imprisonment for a term exceeding one year" to possess "any firearm or ammunition" transported in interstate or foreign commerce. Robinson moved to dismiss the indictment, arguing that § 922(g)(1) violates the Second Amendment. The district court denied his motion. Robinson pleaded guilty but preserved the right to appeal the denial of the motion. The district court accepted his plea and sentenced him to 97 months.

The sole issue on appeal is whether § 922(g)(1), as applied to Robinson, violates the Second Amendment, which provides that "the right of the people to keep and bear Arms" "shall not be infringed." U.S. Const. amend. II. We review Robinson's constitutional challenge to § 922(g)(1) with fresh eyes. *United States v. Gailes*, 118 F.4th 822, 824 (6th Cir. 2024). *United States v. Williams* establishes the relevant framework. 113 F.4th 637 (6th Cir. 2024). It held that the government may apply § 922(g)(1) to "dangerous" felons. *Id.* at 657–58. Because past is prologue, the best evidence that someone is dangerous often is that they have acted dangerously before. *See id.* If a person has committed a "violent" crime once or twice, it stands to reason that they may do so again. *Id.* at 658; *see also United States v. Goins*, 118 F.4th 794, 798 (6th Cir. 2024). Hence we must look at a felon's "entire criminal record" and ask whether his prior convictions show that it would be dangerous for him to bear arms. *Williams*, 113 F.4th at 659; *cf. United States v. Rahimi*, 602 U.S. 680, 690–92 (2024).

Robinson's criminal record shows just that. In seven years, he committed seven crimes. One of those crimes was a violent one, aggravated assault. The crime went well beyond simple battery. He caused an injury so "serious" that the victim either needed "immediate medical treatment" or suffered from "disfigurement, impairment of health, or impairment of a part of the body." *People v. Norris*, 600 N.W.2d 658, 661 n.3 (Mich. Ct. App. 1999). That is a dangerous crime, one that would have been made all the more dangerous had a firearm been involved. *Cf. United States v. Betancourt*, --- F.4th ---, 2025 WL 1571854, at *3–4 (5th Cir. June 4, 2025). Little surprise, then, that assault is one of the quintessential "common-law offenses against the person" that justify taking away a felon's guns. *Williams*, 113 F.4th at 659; *see also United States v. Raphael Williams*, No. 24-1409, 2025 WL 1136326, at *3 (6th Cir. Apr. 17, 2025). At the very least, Robinson may not invoke the Second Amendment as a defense against § 922(g)(1) during his term of probation, *see Goins*, 118 F.4th at 803–04, as happened here. Because he is dangerous, the government may disarm him.

Robinson does not take this analysis head on. The phrase "aggravated assault" in fact does not appear once in either of his briefs. He instead argues that his more recent crimes—possessing illicit drugs, carrying a concealed weapon, and so on—do not show him to be dangerous.

That does not suffice. The burden rests on Robinson to prove that he is not dangerous in view of his "entire criminal record," not just the least offensive subset of that record. *Williams*, 113 F.4th at 657. Because Robinson has committed a violent crime once before, that burden is "extremely heavy." *Id.* at 658. He cannot meet that burden by wishing his most violent prior crime away.

Even if we accepted the premise that Robinson's other crimes do not evince dangerousness on their own (a question we need not decide today), that would not mean that he may bear arms.

3

Those crimes must be viewed in the context of someone who had already proven himself to be violent. His criminal record, viewed as a whole, vividly demonstrates "his clear unwillingness to comply with legal obligations," and his failure to reform his conduct over a number of years. *United States v. Poe*, No. 24-6014, 2025 WL 1342340, at \*3 (6th Cir. May 8, 2025). Robinson does not suggest that his case involves any "unique circumstances" that might excuse his prior behavior. *Williams*, 113 F.4th at 663; *see also Poe*, 2025 WL 1342340, at \*2 & n.3. That leaves us with a criminal history that patently shows dangerousness.

Robinson pivots to procedure. He argues that we may not consider the facts recited in the presentence report in assessing his dangerousness. This argument runs into two obstacles. The first is that we did just that in *Williams* and *Goins*. *Williams*, 113 F.4th at 661–62; *Goins*, 118 F.4th at 804–05. The second is that we do not need to consider those facts to resolve this appeal. We may take judicial notice of Robinson's past convictions. *See United States v. Butts*, 40 F.4th 766, 771 & n.5 (6th Cir. 2022); *cf. Almendarez-Torres v. United States*, 523 U.S. 224, 228–39 (1998). They tell us all we need to know: that Robinson caused someone "serious" injury, Mich. Comp. Laws § 750.81a (aggravated assault), and that Robinson has failed to follow the law since. With or without the particular facts in the presentence report, we have little trouble concluding that the government may disarm Robinson.

Robinson objects that the "individualized" question of whether he is "actually dangerous" is one that only the district court may answer in the first instance. Appellant's Br. 23. But that argument, too, runs headlong into *Williams* and *Goins*. In both cases, we considered for the first time on appeal whether the defendant was dangerous based on his criminal record. *Williams*, 113 F.4th at 661–62; *Goins*, 118 F.4th at 804–05; *see also, e.g.*, *Poe*, 2025 WL 1342340, at \*2–3. Sensibly so. The Criminal Rules instruct us to disregard harmless errors. Fed. R. Crim. P. 52(a).

Because Robinson's "dangerousness" is "self-evident," *Williams*, 113 F.4th at 660, there is no need for a remand that would confirm what the record already reveals.

We affirm.